# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**CHECKERS DRIVE-IN RESTAURANTS, INC.,**

          **Plaintiff,**

**-vs-**                                                            Case No. 6:11-cv-1088-Orl-28GJK

**GREAT FOOD HOLDINGS, LLC**

          **Defendant,**

_____

## REPORT AND RECOMMENDATION

### TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the following motion:

| | |
|---|---|
| **MOTION:** | **MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION (Doc. No. 16)** |
| **FILED:** | **August 22, 2011** |

**THEREON** it is **RECOMMENDED** that the **MOTION** be **GRANTED in part and DENIED in part**.

## I. BACKGROUND.

On June 22, 2010, Checkers Drive-In Restaurants ("Checkers") initiated this action by filing a complaint ("Complaint") against Great Food Holdings, doing business as B.B. McGuire's ("GFH"). The Complaint asserts the following claims: Count I alleges federal trademark infringement; 2) Count II alleges federal trade dress infringement; and 3) Count III alleges common law trademark and trade dress infringement and unfair competition. Doc. No. 1

at 1-11. In the Complaint, Checkers seeks the following relief: a permanent injunction; an accounting; damages; restitution; attorneys' fees; and costs. Doc. No. 1 at 11-12. Checkers owns, operates, and franchises a chain of "quick service, double drive-thru restaurants under the Checkers® and Rally's® brands." Doc. No. 1 at 1. Checkers alleges that over the last thirty years, it "has created and consistently used a unique, distinctive, and uniform trade dress appearance for its Checkers® and Rally's® restaurants, which it and its franchisees use to identify the Checkers® and Rally's® franchise systems as the source of the services generated and products sold from such restaurants." Doc. No. 1 at 1. Checkers attaches a visual depiction of its Trade Dress to the Complaint. Doc. No. 1-2. Checkers is the owner of Registration No. 1,750,671 for its building design and appearance, a copy of which is also attached to the Complaint. Doc. No. 1-3. The mark details the outward design of the building and includes Checkers' Trade Dress. Doc. No. 1-3 at 1.

Checkers alleges that one of its franchisees "formerly occupied a building located at 520 North Courtenay Parkway, Merritt Island, Florida 32953, from which it operated a Checkers® restaurant." Doc. No. 1 at 1. The franchisee abandoned the building without "de-identifying the same as required by its Franchise Agreement." Doc. No. 1 at 1-2. Thereafter, GFH occupied the building by leasing it from the owner, a non-party that is unrelated to Checkers, and began operating a restaurant there under the name of B.B. McGuires, allegedly using Checkers' proprietary trademark, which include its Trade Dress. Doc. No. 1 at 2. Checkers attaches pictures of GFH restaurant to the Complaint. Doc. No. 1-4 at 1-4. Checkers alleges that it has demanded GFH cease and desist from such practices, but GFH has refused. Doc. No. 1 at 2.

On June 25, 2011, GFH was served with a copy of the summons and Complaint. Doc.

Nos. 9 at 1-3. GFH did not respond to the Complaint and, on July 28, 2011, Checkers moved for entry of default, which the clerk entered on July 29, 2011. Doc. Nos. 14-15. On August 22, 2011, Checkers filed a Motion for Entry of Default Judgment and Permanent Injunction (the "Motion"). Doc. No. 16. Checkers requests the following relief:

> 1) [A] permanent injunction enjoining [GFH], and each of its officers, agents, servants, employees, and attorneys, and all other persons, firms or corporations acting concert or participation with them who receive actual notice of this Order by personal service or otherwise, from: using, in any manner, or holding [GFH] out as having rights to use, Checkers' Trade Dress; selling, offering for sale, promoting, advertising, distributing, or providing or offering to provide any services in conjunction with Checkers' Trade Dress, or any trade dress or trademark confusingly similar to Checker's Trade Dress in conjunction with any product or service; and engaging in any course of conduct likely to cause confusion, deception, or mistake with respect to Checkers' Trade Dress or appropriate the goodwill and reputation of said Trade Dress or lead to the passing off of [GFH's] products and services as Checkers' products and services;
>
> 2) [An order directing GFH] to, at a minimum, destroy or paint over the checkerboard design and chrome located on the outside of the restaurant; and
>
> 3) $12,827.50 in attorneys' fees and $385.00 in costs.

Doc. No. 16 at 11. Checkers attaches the affidavit of Brian R. Doster, Checkers' Senior Vice President and General Counsel, stating that Checkers owns a federal trademark registration, which includes its Trade Dress, and GFH is using Checkers' Trade Dress without permission in a confusing manner, such that the public may mistakenly believe that GFH's restaurant is a Checkers restaurant or affiliated with Checkers. Doc. No. 16-2 at 1-2. Mr. Doster states that the use of the Trade Dress by GFH is damaging to Checkers' reputation as well as the goodwill it

3

has built up regarding the Trade Dress. Doc. No. 16-2 at 2. Mr. Dosters states that the damage will continue unless GFH is stopped from using Checkers' Trade Dress. *Id*. at 3.

Checkers also attaches an affidavit and time sheet of its counsel in support of the $12,827.50 in attorneys' fees requested. Doc. No. 16-3 at 1-4. The chart below sets forth each attorney who worked on the case, the hourly rate requested, the numbers of hours expended, and the total amount of attorneys' fees requested:

| Attorney | Hourly Rate | Hours | Total |
|---|---|---|---|
| J. Todd Timmerman | $410.00 | 5.25 | $2,152.50 |
| Mindi M. Richter | $305.00 | 29.7 | $9,058.50 |
| Jason P. Stearns | $250.00 | 3.8 | $950.00 |
| Lori A. Nelson | $215.00 | 3.1 | $666.50 |
| Totals | | 41.85 | $12,827.50 |

Doc. No. 16-3 at 2. The affidavit also states that Checkers incurred $385.00 in costs, reflecting the filing fee and costs of service of process. Doc. No. 16-3 at 2. In the Motion, Checkers has abandoned its claim for damages and GFH's profits. Doc. No. 169 at 7.

## II.  THE LAW.

### A.  Default Judgment.

When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by the civil rules, and that fact is made to appear by affidavit or otherwise, the Clerk enters a default. Fed. R. Civ. P. 55(a). Once a Clerk's default has been entered, a party may move for a default judgment pursuant to Rule 55(b)(2). A default judgment

has the effect of establishing as fact the plaintiff's well-plead allegations of fact, and bars the defendant from contesting those facts on appeal. *Buchanan v. Bowman*, 820 F.2d 39, 361 (11th Cir. 1987).

    **B.**    <u>**Claims for Relief**</u>**.**

Checkers seeks a permanent injunction against GFH for infringing upon Checkers' trademark pursuant to 15 U.S.C. § 1114 because GFH essentially retained the elements of Checkers' Trade Dress. Doc. No. 16 at 5. Section 1114(1) provides liability for trademark infringement for any person who shall, without the consent of the registrant-

> (a) use of commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; or
>
> (b) reproduce, counterfeit, copy, or colorably imitate a registered mark and apply such reproduction, counterfeit, copy, or colorable imitation to labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive, shall be liable in a civil action by the registrant for the remedies herein provided.

15 U.S.C. § 1114(1)(a)-(b). Checkers also maintain that it is entitled to an injunction under 15 U.S.C. Section 1125(a), which provides:

> (1) any person who, in or in connection with any goods or services, or any container for goods, uses in commerce any word, term, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which
>
> > (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
> > (B) in commercial advertising or promotion, misrepresents the nature,

> characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she or is likely to be damaged by such act.

15 U.S.C. § 1125(a). In order to prevail on the trademark infringement claim, a plaintiff must establish: 1) that it had a valid trademark; 2) that the defendant used the mark; 3) that the defendant's use of the mark occurred "in commerce"; 4) that the defendants used the mark "in connection with the sale . . . or advertising of any goods," and 5) the mark was used in a manner likely to confuse consumers. *North American Medical Corp., v. Axiom Worldwide Inc.*, 522 F.3d 1211, 1218 (11th Cir. 2008).

Checkers also maintains that the colorable imitations and counterfeits of Checkers' trademark, which include the Trade Dress, are deliberate and likely to cause confusion. Doc. No. 1 at 7. In the Eleventh Circuit, in order to determine whether an infringement likely causes confusion requires consideration of the following seven factors: 1) the type of mark; 2) similarity of mark; 3) similarity of the products the marks represent; 4) similarity of the parties' retail outlets and customers; 5) similarity of advertising media used; 6) defendant's intent; and 7) actual confusion. *See Dieter v. B & H Indus. of Sw. Fla., Inc.*, 880 F.2d 322, 326 (11th Cir. 1989). "The law is well settled in this circuit that evidence of actual confusion between trademarks is not necessary to a finding of likelihood of confusion." *E. Remy Martin & Co., S.A. v. Shaw-Ross Int'l Imports, Inc.*, 756 F.2d 1525, 1529 (11th Cir. 1985). In the Motion, Checkers states the following:

> In regards to the type of mark, Checkers' Trade Dress is clearly strong, as it has been in use for over twenty years and is the subject of an incontestable registration. [GFH] is using Checkers' Trade Dress [because GFH's] restaurant was formerly a Checkers®

6

> restaurant and has only undergone minor changes. The similarity of the goods for which the marks are used, as well as the retail outlets and customers are the same, given that both Checkers and [GFH] are quick service, drive thru restaurants selling food items such as burgers and hot dogs. [GFH's] intent also is in question given that it took over the location that was formerly a Checkers® restaurant and did not properly deidentify. In addition, [GFH] did not respond to the demand letter sent before the Complaint was filed. Checkers also was contacted by [GFH] after the Complaint was filed, but [GFH] refused to make additional changes to the restaurant when Checkers informed them that the changes made so far were insufficient, and has failed to file anything in response to the lawsuit with the Court. Checkers does not at this time have specific examples of actual confusion, but not only was the [GFH] restaurant just opening at the time this suit was filed, actual confusion is not required for trademark infringement.

Doc. No. 16 at 5-6. Thus, Checkers maintains that factors "overwhelmingly demonstrate" a likelihood of confusion. *Id.*

### C. **Permanent Injunction.**

A district court may grant preliminary injunctive relief if the moving party shows that: 1) it has a substantial likelihood of success on the merits; 2) irreparable injury will be suffered unless the injunction issues; 3) the threatened injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and 4) if issued, the injunction would not be adverse to the public interest. *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1097 (11th Cir. 2004). The standard for a permanent injunction is the same as for a preliminary injunction except that the movant must show "actual success on the merits" instead of a "likelihood of success." *Id.* (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 546 n.12 (1987)).

In trademark infringement actions, injunctive relief is often appropriate because: 1) "there is no adequate remedy at law to redress infringement and [2)] infringement <u>by its nature</u> causes

7

irreparable harm." *Tally-Ho, Inc. v. Coast Cmty. Coll. Dist.*, 889 F.2d 1018, 1029 (11th Cir. 1989) (emphasis added) (citing *Processed Plastic Co. v. Warner Commc'ns*, 675 F.2d 852, 858 (7th Cir. 1982)). Further, courts have generally recognized that in such cases, the public interest is "paramount." *BellSouth Advertising & Publishing Corp. v. Real Color Pages, Inc.*, 792 F. Supp. 775, 785 (M.D. Fla. 1991). Trademark infringement encroaches on "the right of the public to be free of confusion" as well as "the synonymous right of the trademark owner to control his products' reputation." *Id*. (citing *James Burrough Ltd. v. Sign of Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976)).

      **D.**     <u>**Attorneys' Fees and Costs**</u>.

Section 1117(a) provides that a prevailing party shall be entitled recover "the costs of action," and "[t]he court <u>in exceptional cases</u> may award reasonable attorney fees to the prevailing parties." 15 U.S.C. § 1117(a) (emphasis added). Although Section 1117(a) does not define what costs are recoverable, Courts have interpreted it to mean those costs which are recoverable pursuant to 28 U.S.C. § 1920. *See FSC Franchise Co., LLC, v. Express Corporate Apparel, LLC*, Case No. 8:09-cv-454-T-23TGW, 2011 WL 1226002 at *12 (M.D. Fla. Feb. 28, 2011) (citing *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 370-71 (4th Cir. 2001) (finding costs in Section 1117(a) generally means those costs defined in 28 U.S.C. § 1920); *Rib City Group, Inc. v. RCC Restaurant Corp.*, 2010 4739493 at *2 (M.D. Fla. 2010) (denying costs which were not recoverable under Section 1920). Section 1920 allows a prevailing part to recover costs associated with filing fees and service of process. 28 U.S.C. § 1920.

Regarding the recovery of attorneys' fees under Section 1117(a), "exceptional cases" are

those that involve conduct that is "malicious, fraudulent, deliberate, and willful," or in which there is evidence of fraud or bad faith. *See Tire Kingdom, Inc. v. Morgan Tire & Auto. Inc.*, 253 F.3d 1332, 1335-36 (11th Cir. 2001); *Burger King Corp., v. Pilgrim's Pride Corp.*, 15 F.3d 166, 168 (11th Cir. 1994). A party's default alone is not an exceptional circumstance. *See generally FSC Franchise Co., LLC, v. Express Corporate Apparel, LLC*, Case No. 8:09-cv-454-T-23TGW, 2011 WL 1226002 at *8-9 (M.D. Fla. Feb. 28, 2011). For example, in *FSC Franchise Co.*, the Court stated that defaulting does not constitute an exceptional circumstance, but the Court ultimately found that the facts of that case warranted attorneys' fees where the infringing party had previously been in a licensing agreement with the holder of the mark and, once the agreement was terminated, it continued to use the mark without permission. *Id*.

### III. ANALYSIS.

After careful review of the Complaint and Motion, as well as the evidence submitted with the pleadings, it is recommended that the Court finds that sufficient evidence supports Checkers' claims of trademark and trade dress infringement. It is further recommended that the Court find that there is a substantial likelihood of confusion if GFH is not enjoined from utilizing Checkers' Trade Dress. It is also recommended that the Court find the threatened injury to Checkers of continued infringement outweighs any damage a permanent injunction may cause GFH and, if issued, a permanent injunction will not be adverse to the public interest. Accordingly, it is recommended that entry of default judgment and a permanent injunction is warranted.

As for Checkers' request for costs in the amount of $385.00, those costs are recoverable under Section 1920. Accordingly, it is recommended that the Court award Checkers' its costs in the amount of $385.00.

The undisputed facts of this case demonstrate that GFH leased the property at issue from

a non-party, and only made slight changes to it, thereby infringing upon Checkers' Trade Dress. There has been no evidence presented demonstrating that GFH actions were done maliciously, fraudulently, deliberately, or willfully. Accordingly, it is recommended that the Court find that this is not an exceptional case and, therefore, attorneys fees are not warranted.

IV. **CONCLUSION.**

Based on the forgoing, it is **RECOMMENDED** that:

1. The Motion (Doc. No. 16) be **GRANTED in part and DENIED in part;**

2. The Court enter a default judgment against GFH;

3. The Court enter a permanent injunction enjoining GFH and each of its officers, agents, servants, employees, and attorneys, and all other persons, firms or corporations acting concert or participation with them who receive actual notice of this Order by personal service or otherwise, from: using, in any manner, or holding GFH out as having rights to use, Checkers' Trade Dress; selling, offering for sale, promoting, advertising, distributing, or providing or offering to provide any services in conjunction with Checkers' Trade Dress, or any trade dress or trademark confusingly similar to Checker's Trade Dress in conjunction with any product or service; and engaging in any course of conduct likely to cause confusion, deception, or mistake with respect to Checkers' Trade Dress or appropriate the goodwill and reputation of said Trade Dress or lead to the passing off of [GFH's] products and services as Checkers' products and services;

4. The Court enter an order directing GFH to destroy or paint over the checkerboard design and chrome located on the outside of the restaurant;

5. The Court award Checkers $385.00 in costs; and

6. Otherwise **DENY** the Motion (Doc. No. 16).

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

Recommended in Orlando, Florida on October 18, 2011.

Copies furnished to:
The Presiding District Judge
Counsel of Record
Unrepresented Party

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE